UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                 :

TEBYTHA CHAN,                              :

                      Plaintiff,          :

                                   :                25-CV-2020 (JMF)

          -v-                   :

                                   :              OPINION AND ORDER

KAFENE, INC.,                         :

                                 :

                    Defendant.       :

                                 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Tebytha Chan brings breach-of-contract, employment discrimination, and wage-related claims against her former employer, Defendant Kafene, Inc. ("Kafene"). The case might be straightforward, except that Kafene is located in New York while Chan lived and worked (remotely) in three different states during her employment — California, Oregon, and Florida — and brings fifteen claims under federal law, California law, Oregon law, and New York law. Kafene now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for partial dismissal — namely, for dismissal of all or nearly all claims under New York and Oregon law and some claims under California law. *See* ECF No. 10; *see also* ECF No. 10-1 ("Def.'s Mem.").[1] For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the First Amended Complaint ("Complaint") and assumed to be true for purposes of this motion. *See, e.g., LaFaro v. N.Y.*

---

[1] Kafene does *not* move to dismiss Chan's claims for breach of contract (Count I), for race discrimination in violation of 42 U.S.C. § 1981 (Count XIV), and for entering a non-compete agreement in violation of California law (Count XV).

*Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Chan, a single mother of Asian descent, was employed by Kafene, a company based in New York, from about July 2022 through January 2025. *See* ECF No. 9 ("FAC"), ¶¶ 3-4, 6-8, 12. As noted, Chan's employment with Kafene spanned three different states: California, Oregon, and Florida. *See id.* ¶¶ 39-40. When Chan started working for Kafene in July 2022, she resided in California, *see id.* ¶ 8, where she remained "until approximately October 2023," *id.* ¶ 39. At that point, Chan moved to Oregon for about one year, *see id.* ¶¶ 39-40, before making her way to Florida in "approximately November 2024," *id.* ¶ 40. Chan was living in Florida in January 2025, when Kafene terminated her employment. *See id.* ¶¶ 3, 40.

When Chan began working, the parties entered into a contract titled "CONFIDENTIAL INFORMATION AND INVENTION ASSIGNMENT AGREEMENT" (the "Employment Agreement"). ECF No. 9-2 ("Agmt."); *see also* FAC ¶ 8. As relevant here, the Employment Agreement included a provision specifying that Chan's employment was "at-will," Agmt. ¶ 9, and another providing for a one-year "non-compete," *id.* ¶ 8(c). The Employment Agreement also included a choice-of-law clause, which provided that "[t]he validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of Delaware,[1] without giving effect to the principles of conflict of laws." *Id.* ¶ 12(a). Of significance here, however, the accompanying footnote stated: "Needs to be California for California based employees." *Id.* ¶ 12(a) n.1.

During Chan's time in California, she was promoted twice — most pertinently, in July 2023 to the position of Director of Client Management of the West Coast. *See* FAC ¶¶ 9-10. After a "few months," Chan also assumed responsibility for the Central Region. *Id.* ¶ 27. For the entirety of Chan's time as a Director of Client Management for Kafene, she was paid a salary

of $90,000 plus commissions and other benefits.  *See id.* ¶¶ 10, 26.  Chan alleges that, during that time, she earned approximately $56,600 in commissions — including a $2,000 commission on October 31, 2023 — of which Kafene paid only about $12,100.  *See id.* ¶¶ 17-18, 20-25, 65.

In approximately December 2022, Kafene hired Tomeka Greene, a Black woman, to be Director of Client Management of the East Coast.  *Id.* ¶ 29.  The Complaint alleges that Greene "had equal experience in the field as Plaintiff."  *Id.* ¶ 30.  It also asserts that "[t]he job duties and the qualifications for all of Defendant's Director of Client Management positions in each of its regions, were at all relevant times, substantially identical."  *Id.* ¶ 31.  Greene, however, "earned nearly twice the base salary as Plaintiff ($150,000), plus commissions."  *Id.* ¶ 29.  Chan complained about the discrepancy but she "never received a pay raise to close the discrepancy in her compensation as compared to Greene's."  *Id.* ¶¶ 32-37.

In approximately September 2023, while still living in California, Chan expressed interest in the open position of Regional Vice President of the West Coast, which offered a higher salary than her then-current role.  *See id.* ¶¶ 6, 44-45.  But Chan was pregnant at the time, and her supervisor, Jeffrey Kitch, discouraged her from applying because "a role with that much travel would be too much for someone who is pregnant."  *Id.* ¶ 46; *see id.* ¶¶ 32, 117.  Chan had traveled throughout her pregnancy, but, "[a]s a result of" Kitch's discouragement, she did not apply for the position, which was given to a male colleague.  *Id.* ¶¶ 43, 47-49, 117.

Chan gave birth in January 2024, a few months after she had moved to Oregon.  *See id.* ¶¶ 39, 50.  The following month, she returned to work and applied for the position of Regional Vice President of the East Coast after "Kitch encouraged her to apply."  *Id.* ¶¶ 50-51.  Chan interviewed for the position, and "communicated to the company that she was planning to relocate to the East Coast to make her a more suitable candidate for the role," but Kafene rejected her on the ground that "she was not suitable for the role because she lived in Oregon,

and they wanted the Regional Vice President to live on the east coast." *Id.* ¶¶ 52-54. Kafene instead hired Donna Larsen, a white married woman who lived in Nebraska. *Id.* ¶ 54.

In January 2025, approximately two months after Chan moved to Florida, Kafene terminated her employment as part of "a mass layoff." *Id.* ¶ 12, 40. At that time, at least three of Chan's earned commissions remained unpaid in whole or in part. *See id.* ¶¶ 20-25, 65. This lawsuit soon followed. *See* ECF No. 1. In her operative Complaint, Chan brings fifteen claims: a claim for breach of contract (Count I), *see* FAC ¶¶ 61-66; claims for violations of various California and Oregon wage statutes (Counts II and III, respectively), *id.* ¶¶ 67-84; claims for race-based pay discrimination under the California, New York, and Oregon equal pay acts, *id.* ¶¶ 85-112 (Counts IV, V, and VI, respectively); claims for discrimination — primarily on a failure-to-promote theory — under 42 U.S.C. § 1981, the California Fair Employment and Housing Act ("FEHA"), the New York State and New York City Human Rights Laws, and the Oregon Anti-Discrimination Law (Counts VII through XIV, respectively), *id.* ¶¶ 113-75; and a claim challenging the enforceability of her non-compete agreement (Count XV), *id.* ¶¶ 176-82.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Burch. v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A plaintiff's claims will survive a motion to dismiss, however, only if it alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a plaintiff must show "more

4

than a sheer possibility that [the defendant] has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If a plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 547.

**DISCUSSION**

Kafene moves to dismiss Counts II through IX, part of Count X, and Counts XI through XIII, which includes all or nearly all claims under New York and Oregon law and some claims under California law. *See* Def.'s Mem. 2. The Court need not discuss the claims under New York law (Counts VI-VIII, XII, and XIII) or the claim of discrimination based on family status under Oregon law (part of Count X) because Chan either does not respond to Kafene's arguments on those claims or explicitly withdraws them. *See* ECF No. 12 ("Pl.'s Mem."), at 1, 11-12; *see also Jamie H. Bassel DC PC v. Aetna Health Ins. Co.*, No. 20-CV-9019 (JMF), 2022 WL 910640, at *1 (S.D.N.Y. Jan. 6, 2022) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's argument that the claim should be dismissed." (internal quotation marks omitted)). Accordingly, Kafene's motion is granted without objection on those claims, and the Court will focus on the remaining claims: Counts II, IV, IX, and XI, which press claims for discrimination and unpaid wages (specifically, Chan's commissions) under various California statutes, including several Labor Code provisions requiring the timely payment of wages, the California Equal Pay Act ("CEPA"), and FEHA; and Counts III, V, and X, which press, "in the alternative," largely parallel claims under Oregon law, specifically analogous timely wage statutes, the Oregon Equal Pay Act ("OEPA"), and the Oregon Anti-Discrimination Law. The Court will address the claims under California law and then turn to the claims under Oregon law, but begins with a brief discussion about choice of law.

**A.  Choice of Law**

Given Chan's moves from California to Oregon to Florida, it is perhaps not surprising that choice-of-law issues loom large in this case.  In particular, many of the parties' disputes turn on whether and to what extent California law applies to Chan's claims.  *Compare* Pl.'s Mem. 5-7, *with* Def.'s Mem. 9-13; ECF No. 13 ("Def.'s Reply"), at 7; *see also, e.g.*, *Tetrault v. Cap. Grp. Companies Glob.*, No. 23-CV-5144-WLH-E, 2024 WL 3468903, at *5-6 (C.D. Cal. Jan. 17, 2024) (canvassing decisions on FEHA's geographic limits); *Hill v. Gergun Transp., Inc.*, No. 24-CV-1751-CSK, 2024 WL 4203379, at *9-10 (E.D. Cal. Sept. 16, 2024) (same as to California Labor Code prompt-payment provisions).  Chan contends that, notwithstanding her move from California in late 2023, California law governs all of her claims (contractual and statutory) because the choice-of-law provision in her Employment Agreement pointed to California law for "California based employees."  Agmt. ¶ 12(a) & n.1; *see* Pl.'s Mem. 5-7.  She thus primarily presses California claims and pleads Oregon claims in the alternative.  *See id.* at 11.  By contrast, Kafene contends that (1) the choice-of-law provision is not broad enough to encompass Chan's non-contractual claims and (2) even if it were, California law could not apply to Chan's claims to the extent that they arise from her employment after she left California.  *See* Def.'s Mem. 10-12; Def.'s Reply 3-7.

For the purposes of this motion, however, the Court need not and does not decide either whether the parties contracted for California law to apply to Chan's employment after she left California or whether the choice-of-law provision in the Employment Agreement encompasses non-contractual claims.[2]  Even if Chan were right on both these fronts, and California law

---

[2]    Whether the Employment Agreement calls for application of California law to *any* of Chan's claims after she left California is debatable.  The choice-of-law provision points to California law for "California based employees" and to Delaware law for all others.  *See* Agmt § 12(a) & n.1.  After Chan left California, she was no longer a "California based employee," so

applies to all of Chan's claims, that would mean "*all* of California law — including California's presumption against extraterritorial application of its law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014); *see, e.g.*, *Wilson v. Wavestream Corp.*, No. 24-CV-61-MCS-BFM, 2024 WL 3914475, at *2 n.2 (C.D. Cal. May 13, 2024) ("[A] California choice-of-law clause incorporates California's presumption against extraterritoriality and its geographical limitation unless there is an indication otherwise."); *cf. Marino v. N.Y. Tel. Co.*, 944 F.2d 109, 114 (2d Cir. 1991) ("It is a matter of common sense that when the parties stipulated to the application of New York law they agreed to the application of the appropriate New York laws."). Indeed, nothing in the Employment Agreement's choice-of-law provision purports to override California's own limits on the extraterritorial application of its laws. *See* Agmt. § 12(a) & n.1. Accordingly, regardless of whether the parties' Employment Agreement calls for California law to govern Chan's claims, she is subject to the geographic limits of California law.

**B.  Claims Under California Law**

The Court turns then to Chan's claims under California law that Kafene moves to dismiss, to wit: her claims for non-payment of commissions (Count II); race-based pay discrimination (Count IV); and discrimination based on sex and familial status (Counts IX and XI). The Court will address each claim in turn.

**1.  Count II: Non-Payment of Commissions**

Count II of the Complaint seeks to recover for Kafene's nonpayment of Chan's commissions upon termination of her employment. *See* FAC ¶¶ 67-75 (citing CAL. LAB. CODE §§ 201, 203-04, 218); Pl.'s Mem. 9. Section 204 of the California Labor Code requires semi-monthly payment of wages, and Section 201(a) provides that when an employee is discharged,

---

there is at least an argument that Delaware law then applied to her. But the parties do not brief this issue, so the Court will not address it further here.

"the wages earned and unpaid at the time of discharge" — including any commissions — "are due and payable immediately." CAL. LAB. CODE §§ 200, 201(a), 204.  Moreover, "[i]f an employer willfully fails to pay wages due upon discharge," Section 203 "provides for so-called 'waiting time penalties.'" *Hartstein v. Hyatt Corp.*, 82 F.4th 825, 829 (9th Cir. 2023).  Section 218 creates a private right of action to enforce these provisions. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 121-23 (2019); *Noe v. Superior Ct.*, 237 Cal. App. 4th 316, 339-40 (Cal. Ct. App. 2015); *Sampson v. Parking Serv. 2000 Com, Inc.*, 117 Cal. App. 4th 212, 220 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Apr. 28, 2004).  Asserting that all of Chan's commissions were earned for work she performed out of California, Kafene contends that she fails to state a claim because the "'California Labor Code applies [only] *to work performed in California*.'" Def.'s Mem. 12 (quoting *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1061 (N.D. Cal. 2017)).

Kafene may well be right the California Labor Code provisions do not extend to any commissions earned for work Chan performed after she moved from California. *See Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 755-56 (2020) (holding that Section 226 of the Labor Code covers "workers . . . if they perform the majority of their work in California," unless "they do not perform the majority of their work in any one state," in which case "they will be covered if they are based for work purposes in California"); *see also Bernstein v. Virgin Am., Inc.,* 3 F.4th 1127, 1143 (9th Cir. 2021) (finding that the same "kinds of California connections" trigger the application of Section 201 as Section 226 (internal quotation marks omitted)).  But it does not follow that Chan fails to state a claim because, based on the allegations in the Complaint, the Court can infer that her first commission, which remains unpaid, FAC ¶ 20, was, at least in part, for work she performed prior to her move and, thus, primarily in California, *id.* ¶¶ 8, 15, 20, 39. Accordingly, at least to the extent that Chan sues Kafene for nonpayment of this first

8

commission upon her termination, she states a claim.  *See Ward*, 9 Cal. 5th at 755-56; *Bernstein*, 3 F.4th at 1143-44; *see also, e.g.*, *Fox v. Bodum USA, Inc.,* No. CV 25-04249-RAO, 2025 WL 2995103, at *9 (C.D. Cal. Oct. 7, 2025) (finding that the plaintiff stated a Section 204 claim where he alleged that the company had failed, among other things, to make any earned commission payment for the first ten months of his employment); *Lopez v. Smiths Detection, Inc.*, No. 20-CV-1453 JLS (WVG), 2021 WL 254231, at *10 (S.D. Cal. Jan. 26, 2021) (finding that the plaintiff sufficiently pleaded a claim under Sections 201 and 203 where he alleged that "he was due wages — *i.e.,* his commission payment — on the date he was terminated" and that the defendant had "'failed to pay, and continues to fail to pay,' those wages").  The Court need not say more at this stage of the litigation.

### 2. Count IV: Rase-Based Pay Discrimination

Next, Count IV asserts a claim of race-based pay discrimination under CEPA.  *See* FAC ¶¶ 85-94.  To plead a CEPA violation, an employee must demonstrate that her employer paid her "at wage rates less than the rates paid to employees of another race or ethnicity for substantially similar work . . . performed under similar working conditions."  CAL. LAB. CODE § 1197.5(b); *see, e.g.*, *Hawkins v. Swisher Int'l, Inc.*, No. EDCV 21-746 PSG (SHKX), 2021 WL 7707940, at *5 (C.D. Cal. Dec. 7, 2021); *see also Allen v. Staples, Inc.*, 299 Cal. Rptr. 3d 779, 783 (Cal. Ct. App. 2022) (explaining that a *prima facie* case of wage discrimination includes a showing of "different wages to employees doing substantially similar work under substantially similar conditions").  As under the federal standard — to which California courts frequently look, *see, e.g.*, *Hall v. Cnty. of Los Angeles*, 148 Cal. App. 4th 318, 324 n.4 (Cal. Ct. App. 2007); *see also Allen*, 299 Cal. Rptr. 3d at 194 n.7 — substantial similarity turns on "actual job performance and content rather than job descriptions, titles, or classifications."  *Thompson v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 24-CV-09274-SVW-BFM, 2025 WL 1384254, at *4 (C.D. Cal. Mar. 19,

2025) (internal quotation marks omitted); *accord Winns v. Exela Enter. Sols., Inc.*, No. 20-CV-06762-YGR, 2022 WL 4094137, at *11 (N.D. Cal. Aug. 17, 2022), *aff'd*, No. 22-16342, 2023 WL 4992825 (9th Cir. Aug. 4, 2023); *see also E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) ("At the pleading stage, . . . a plausible [federal] EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'").

Chan's CEPA claim here rests on her allegation that Greene, a Black woman who was hired in late 2022 as Director of Client Management of the East Coast, received higher pay for substantially similar work. *See* FAC ¶¶ 27-38. The similarity of Greene's job title aside, however, the Complaint fails to plausibly allege that the two positions were substantially similar. At most, the title similarity allows an inference that both women managed the "house accounts" in their respective regions. *Id.* ¶ 11. But the Complaint contains no allegations showing, for example, that each region had a comparable number of house accounts or that the accounts of each region required more, less, or the same amount of management.[3] The Complaint's allegations are thus too conclusory to infer that Chan and Greene performed substantially similar work. *See, e.g.*, *Hawkins*, 2021 WL 7707940, at *5; *cf. Port Auth. of N.Y. & N.J.*, 768 F.3d at 249-51, 256-58 (finding that the plaintiff's allegation that male and female nonsupervisory attorneys shared job codes was insufficient to state a federal EPA claim alongside otherwise general allegations). As "conclusory allegations are insufficient to state a claim," *Fitzsimons v.*

---

[3]    Chan alleges that she — but not Greene — was also tasked with certain training responsibilities. *See* FAC ¶¶ 28, 33. But these allegations do not shed any further light on whether she and Greene were "doing substantially *similar* work under substantially *similar* conditions," *Allen v. Staples, Inc.*, 299 Cal. Rptr. 3d 779, 783 (Cal. Ct. App. 2022) (emphasis added) (internal quotation marks omitted), and thus whether Greene was a proper comparator.

*N.Y.C. Dist. Council of Carpenters & Joiners of Am.*, No. 21-CV-11151 (AT), 2023 WL 3061852, at *3 (S.D.N.Y. Apr. 24, 2023), Chan's CEPA claim fails.

### 3. Counts IX and XI: Discrimination Based on Sex and Familial Status

The final set of California claims — Counts IX and XI — are for discrimination based on sex and familial status in violation of FEHA. *See* FAC ¶¶ 130-36, 144-50 (citing CAL. GOV'T CODE § 12900 *et seq.*). At the outset, Kafene argues that these claims must be dismissed because Chan fails to plead that she exhausted her administrative remedies. *See* Def.'s Mem. 6-7. Kafene is correct that, before filing suit under FEHA, a plaintiff must submit an administrative charge to the appropriate state agency and obtain a right-to-sue letter. *See Pollock v. Tri-Modal Distrib. Servs., Inc.*, 11 Cal. 5th 918, 931 (2021); *see also* CAL. GOV'T. CODE §§ 12960, 12965(c)(1)(A), (C). Further, the administrative charge must be filed within three years of the alleged discriminatory act, *see* CAL. GOV'T. CODE §§ 12960(e)(3); *Pollock*, 11 Cal. 5th at 931,[4] and any civil suit must be filed "within one year of obtaining a right-to-sue letter," *Minor v. Fedex Off. & Print Servs., Inc.*, 182 F. Supp. 3d 966, 982 (N.D. Cal. 2016); *see also* CAL. GOV'T. CODE § 12965(c)(1)(C), (e)(1). "A plaintiff who fails to sufficiently allege exhaustion of administrative remedies fails to state a FEHA claim." *Manalastas v. Joie de Vivre Kabuki, LLC*, No. 23-CV-03957 (HSG), 2024 WL 4982988, at *2 (N.D. Cal. Dec. 4, 2024).

Citing to Exhibit 1 of her Complaint, Chan alleges that she filed an administrative charge and received a right-to-sue letter on March 10, 2025 — one day before filing suit. *See* FAC ¶¶ 136, 150. But as Kafene observes, *see* Def.'s Mem. 7, the Exhibit, which is dated March 10, 2025, is *not* a right-to-sue letter. Instead, it is a letter that refers to a previously issued right-to-sue letter. *See* ECF No. 9-1 ("Letter"). And it does not state when the actual right-to-sue letter

---

[4]    Until January 2020, the statute required any charge to be filed within one year of the alleged discriminatory act. *See Cuellar v. SEIU-USWW*, No. 22-CV-1359-SPG-MAA, 2023 WL 7475734, at *2 (C.D. Cal. Jan. 31, 2023).

was issued.  The Exhibit thus contradicts Chan's allegation that she received a right-to-sue letter on March 10, 2025.  Because documents "relied on in the complaint" that "contradict[]" its allegations "control," *United States ex rel. Taylor v. GMI USA Corp.*, 714 F. Supp. 3d 275, 285-86 (S.D.N.Y. 2024) (internal quotation marks omitted), the Court cannot and does not accept Chan's contention that she received a right-to-sue letter *on March 10, 2025*.

That does not doom Chan's claims at this stage of the litigation, however, because the Exhibit is enough to establish that Chan filed an administrative charge and obtained a right-to-sue letter in this case.  *See* Letter 2-4.  To be sure, the precise date on which Chan received the right-to-sue letter is unclear on this record.  But "[t]he administrative time limits prescribed by FEHA are treated as equivalent to statutes of limitations," *Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir. 2001), which operate as affirmative defenses, *see Pollock*, 11 Cal. 5th at 945, 947; *Malaspina v. Am. Airlines, Inc.*, No. 25-CV-05411-JSC, 2025 WL 3043359, at *2 (N.D. Cal. Oct. 31, 2025).  And it is well established that a plaintiff need not plead around affirmative defenses, *see, e.g.*, *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 23-CV-6237 (DEH), 2024 WL 2978306, at *3 (S.D.N.Y. June 12, 2024), so "[a] court can only dismiss a claim on statute of limitations grounds when it is apparent from the face of the complaint that a claim is time-barred," *Inspired Cap., LLC v. Conde Nast*, No. 18-CV-712 (JFK), 2019 WL 2191249, at *5 (S.D.N.Y. May 21, 2019).  *But see, e.g.*, *Earnest v. San Joaquin Cnty.*, No. 216CV01064MCECKD, 2019 WL 460544, at *4 (E.D. Cal. Feb. 6, 2019) (dismissing a FEHA claim for failure to plead the date of the right-to-sue letter after the Court ordered Plaintiff to supplement her allegations); *Pittman v. Cedars-Sinai Med. Ctr.*, No. 14-07857 (SVW) (FFM), 2015 WL 13857136, at *2 (C.D. Cal. May 14, 2015) (dismissing a FEHA claim without prejudice for failure to plead the date of the notice-to-sue letter).  That is not the case here, so Chan's claims cannot be dismissed at this stage for failure to exhaust.  *Cf. Mitchel v. City of*

12

*Santa Rosa*, 476 F. App'x 661, 664 (9th Cir. 2011) (affirming dismissal where it was clear from the face of the complaint that the FEHA claims were time barred).

That said, while both FEHA claims clear the statute's administrative exhaustion hurdle, only Count IX ultimately states a claim. Count IX alleges that Kafene violated FEHA by refusing to consider Chan for promotion to the position of Regional Vice President of the West Coast due to her pregnancy. *See* FAC ¶¶ 44-47, 49, 130-36. Kafene argues that this Count fails to state a claim because Chan concedes that she never applied for the position. *See* Def.'s Mem. 8-9; Def.'s Reply 7-8; *see* FAC ¶ 47 ("Plaintiff did not apply . . . ."). But while an employee must generally have applied for a promotion to sustain a failure-to-promote claim, *see Knox v. Contra Costa Cnty.*, No. 20-CV-01449 (JCS), 2022 WL 2290686, at *26 (N.D. Cal. June 24, 2022), there is an exception to this rule when applying would have been futile because, for example, the plaintiff was "discouraged" from doing so, *Breiner v. Nev. Dep't of Corr.*, 610 F.3d 1202, 1206 (9th Cir. 2010) (internal quotation marks omitted); *see also Abed v. W. Dental Servs., Inc.*, 23 Cal. App. 5th 726, 740-42 (Cal. Ct. App. 2018) (discussing the so-called "futile-gesture doctrine"). This is precisely what Chan alleges here: that "Defendant asked her not to apply because Plaintiff was a single pregnant woman," FAC ¶ 48, and that her supervisor dissuaded her from applying because "a role with that much travel would be too much for someone who is pregnant," *id.* ¶ 46; *see also id.* ¶ 47 ("As a result of Defendant discouraging her from applying because she was too pregnant, Plaintiff did not apply."). Accordingly, Chan's decision not to apply for the position does not defeat her claim. *See, e.g.*, *Knox*, 2022 WL 2290686, at *25.

By contrast, Count XI, which is based on Kafene's decision not to promote Chan to Regional Vice President of the East Coast in 2024, fails as a matter of law. *See* FAC ¶¶ 51-55, 144-50. When Chan was passed over for this promotion, she resided in Oregon and primarily worked remotely. *See* FAC ¶¶ 39, 41. Although Chan's position required significant travel, *see*

*id.* ¶¶ 41-42, the Complaint nowhere alleges that she worked (let alone worked substantially) in California following her move.  Nor does the Complaint allege that Kafene, which is based in New York, made the decision to deny her the promotion in California or even that the company had a presence in California.  In short, for purposes of Count XI, Chan is a non-California resident employed out of state and challenging out-of-state conduct.  FEHA therefore does not apply.  *See Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (Cal. Ct. App. 1996) ("[FEHA] should not be construed to apply to nonresidents employed outside the state when the tortious conduct did not occur in California."); *see also Eng. v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. 2020) (holding that FEHA did not apply where challenged conduct occurred outside of California); *Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524, 526 (9th Cir. 2017) (same); *Marks v. Am. Airlines, Inc.*, 313 F. App'x 933, 934 (9th Cir 2009) (holding that the FEHA did not apply to a nonresident).  Thus, Count XI must be and is dismissed.

## C.  Claims Under Oregon Law

Given that the geographic limits of California's laws apply to Chan's claims, it is appropriate to address Chan's Oregon claims, which are brought in the alternative.  In addition to the portion of Count X alleging discrimination on the basis of family status, which the Court addressed above, Kafene moves to dismiss her claims for non-payment of commissions (Count III) and race-based pay discrimination (Count V).  The Court will address each claim in turn.

### 1.  Count III: Non-Payment of Commissions

First, mirroring Count II, Count III of the Complaint seeks to recover for Kafene's nonpayment of commissions upon discharge under Oregon's analogue statute, OR. REV. STAT.

ANN. § 652.140. FAC ¶¶ 76-84; Pl.'s Mem. 11-12.[5] Section 652.140 provides that, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." OR. REV. STAT. ANN. § 652.140(1). "If an employer fails to pay the wages required by [Section] 652.140, then penalties apply under [Section] 652.150, and the employee may seek attorney fees under [Section] 652.200." *Nkrumah v. City of Portland*, 261 Or. App. 365, 379 (Or. Ct. App. 2014).

Some of Chan's unpaid commissions were indisputably earned for Oregon-based work, *see* FAC ¶¶ 21-25, 39-40, 65, so Kafene wisely does not focus on where the work was performed in challenging Count III. Instead, Kafene argues that the Complaint fails to state a claim because, by the time Chan was terminated, she was no longer an "employee" within the meaning of the statute. *See* Def.'s Mem. 18.[6] The term "employee" is undefined in Sections 652.140, 652.150, and 652.200, so Oregon courts look to the definitions in Sections 652.210 and 652.310. *See, e.g.*, *Duckworth v. Duckworth*, 327 Or. App. 219, 252 (Or. Ct. App. 2023); *Taylor v. Werner Enters., Inc.*, 329 Or. 461, 467 (1999); *Thompson v. Bolliger, Hampton & Tarlow*, 118 Or. App. 700, 703 (Or. Ct. App. 1993); *Lamy v. Jack Jarvis & Co.*, 281 Or. 307, 313 (1978). As relevant here, both Sections define an "employee" as an individual who "renders personal services wholly or partly in" Oregon. OR. REV. STAT. ANN. §§ 652.210(2), .310(2). When "services are rendered

---

[5]    To extent the Complaint purports to bring claims under other Oregon statutes, such as Or. Rev. Stat. Ann. § 652.240, *see* FAC ¶¶ 76-84, Chan abandons them by failing to respond to Kafene's arguments, *compare* Def.'s Mem. 17-18, *with* Pl.'s Mem. 11-12; *see* Def.'s Reply 10.

[6]    Kafene does not make this argument with respect to Chan's claim for unpaid commissions under California law, for good reason. "The article of the [California] Labor Code that governs the payment of wages defines the terms 'wages' and 'labor,' but does not define 'employee.'" *Woods v. Am. Film Inst.*, 72 Cal. App. 5th 1022, 1035 (Cal. Ct. App. 2021) (citing CAL. LAB. CODE § 200). "Wages", moreover, "includes all amounts for labor performed by employees of every description," including that earned on a "commission basis." CAL. LABOR CODE 200(a).

only partly in" Oregon, however, an individual is not an employee "unless the contract of employment of the employee has been entered into, or payments thereunder are ordinarily made or to be made, within this state." OR. REV. STAT. ANN. §§ 652.210(2), .310(2)(b). Invoking Section 652.210(2), Kafene contends that Chan cannot recover because, by the time she was terminated, she had moved to Florida and so was no longer "render[ing] personal services wholly or partly" in Oregon. Def.'s Mem. 19 (internal quotation marks omitted).

Chan does not argue that she qualified as an "employee" at the time of her discharge. Instead, she argues that the Oregon statutes apply to her because she qualified as an employee "at the time she performed the work for which she was uncompensated and because she performed substantial work for Defendants in Oregon." Pl.'s Mem. 11-12. Although the parties' briefing on this point leaves much to be desired and the relevant case law is scant, the Court agrees with Chan. To begin, the plain text of Section 652.140 — which is "the starting point for interpretation and . . . the best evidence of the legislature's intent" — indicates that the statute seeks to capture unpaid wages at the termination of an employment relationship regardless of whether the employee still qualifies as an employee when the relationship ends. *Portland Gen. Elec. Co. v. Bureau of Lab. & Indus.*, 317 Or. 606, 610 (1993). If Chan's employment had been terminated by mutual agreement, the statutory definitions of "employee" would pose no barrier to recovery. *See* OR. REV. STAT. ANN. § 652.140(1) ("[W]hen employment is terminated by mutual agreement, all wages earned and unpaid at the time of the . . . termination become due and payable not later than the end of the first business day after the . . . termination."). It makes little sense to construe the statute to protect an employee whose employment was terminated by agreement but *not* one who was discharged — especially in light of the remedial purposes of the statute. *See Lamy*, 281 Or. at 313 (explaining that the "central purpose" of Sections 652.140, 652.150, and 652.200 is "that of assuring that one who works in a master and servant

16

relationship, usually with a disparity of economic power existing between himself and his superior, shall be assured of prompt payment for his labors when the relationship is terminated"); *see also, e.g.*, *Halperin v. Pitts*, 352 Or. 482, 495 (2012) ("[R]emedial statutes are to be construed liberally to effectuate the purposes for which they were enacted."); *cf. Wyatt v. Body Imaging, P.C.*, 163 Or. App. 526, 534 n.1 (Or. Ct. App. 1999) ("Consistent with that common meaning and with the remedial purpose of the legislation, the Oregon Supreme Court has construed the term 'wages' as it is used in ORS 652.200(2) to encompass not only hourly wages, but any type of compensation for an employee's labor or services.").

Further, to the extent Sections 652.210 and 652.310 provide relevant definitions for purposes of Section 652.140, their breadth evinces "a strong public policy interest in the full and timely payment of employee wages generally and upon termination" and a "strong interest" in covering all those who performed substantial work in Oregon. *Schedler v. FieldTurf USA, Inc.*, No. 16-CV-0344-PK, 2017 WL 3412205, at *3 (D. Or. Aug. 9, 2017). Thus, the definitions militate in favor of interpreting the statute to extend to those who, like Chan, once qualified as employees — and, in that capacity, earned commissions that were not paid — but no longer qualify on the date of termination. Moreover, to hold otherwise might leave some employees without recourse for unpaid wages earned for Oregon-based work, contrary to state policy. In sum, the Court concludes that "[w]ages withheld from earlier pay periods are no less 'earned and unpaid' at the time of discharge under ORS 652.140" simply because the employee no longer qualifies as an employee at the time of discharge. *Salinas v. One Stop Detail*, 194 Or. App. 457, 461 (Or. Ct. App. 2004). Accordingly, Chan states a claim for unpaid commissions under Oregon law.

17

### 2. Count V: Rase-Based Pay Discrimination

The Court need not dwell long on Count V, which, like Count IV, is a claim of race-based pay discrimination based on the fact that Greene was paid a higher salary. *See* FAC ¶¶ 27-38, 95-103. Putting aside whether the Oregon law extends to "pay inequities between employees in different locations" at all, Def.'s Mem. 19 (internal quotation marks omitted), Chan's conclusory allegations concerning the "comparable" nature of her and Greene's work doom her claim under Oregon law just as they doomed her analogous claim under California law, *see, e.g.*, *Jost v. Synopsis, Inc.*, No. 21-CV-01793-HZ, 2022 WL 3083722, at *1, *3 (D. Or. Aug. 1, 2022). Thus, Count V must be and is dismissed.

### CONCLUSION

For the foregoing reasons, Kafene's motion to dismiss is GRANTED with respect to Counts IV-VIII, X (to the extent it attempts to state a claim for familial status discrimination), and XI-XIII, and DENIED with respect to Counts II, III, and IX. Unless and until the Court orders otherwise, Kafene shall answer the remaining claims (which includes Counts I and XIV-XV, which Kafene did not seek to dismiss) within **three weeks of the date of this Opinion and Order**. *See* Fed. R. Civ. P. 12(a)(4)(A). Additionally, all parties shall appear for an initial pretrial conference with the Court on **January 27, 2026**, at **9:00 a.m.** The conference will be held remotely by telephone in accordance with Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman. The parties should join the conference by calling the Court's dedicated conference line at (855) 244-8681 and using access code 2303 019 3884, followed by the pound (#) key. When prompted for an attendee ID number, press the pound (#) key again. Counsel should review and comply with the rules regarding teleconferences in the Court's Individual Rules and Practices in Civil Cases, including Rule 2(B)(i), which requires the parties, **no later than 24 hours before the**

**conference**, to send a joint email to the Court with a list of counsel who may speak during the

teleconference and the telephone numbers from which counsel expect to join the call.

The Clerk of Court is directed to terminate ECF No. 10.


SO ORDERED.

Dated: December 22, 2025
      New York, New York
                                   JESSE M. FURMAN
                              United States District Judge